UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAMUEL L. ALEXANDER

    Plaintiff,

     v.

WASHINGTON GAS LIGHT COMPANY,
*et al.*,

    Defendants.

Civil Action No. 05–913 (CKK)

**MEMORANDUM OPINION**
(February 23, 2006)

In the instant case, Plaintiff, Samuel L. Alexander, proceeding *pro se*, brings suit against

a number of parties related to a contract signed by Plaintiff for the purchase and installation of

gas-fired furnaces, Plaintiff's unpaid debt stemming from this contract, and successful civil

litigation against Plaintiff in the District Court for Charles County, Maryland, for the amount of

the unpaid debt.  Presently before the Court are three dispositive motions:  Defendants

Washington Gas Light Company, Ted Bonora, and Paul Teague's [13] Motion for Summary

Judgment or Alternatively, to Dismiss for Failure to State a Claim ("WGL Defendants'

Dispositive Motion"); Defendants Jerome Stanbury and Adam Kish as individuals and corporate

entities as well as A.C. & S. Collections, Inc.'s [17] Motion to Dismiss or, in the Alternative,

Motion for Summary Judgment ("Stanbury Defendants' Dispositive Motion"); and [19]

Defendants John LaRose, Compu-Link Corporation and Celink's Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(e) ("Compu-Link Defendants' Dispositive Motion").

After the Court issued an [21] Order informing Plaintiff of the consequences of failing to

respond to a dispositive motion, Plaintiff filed [23] Plaintiff's Motion to Strike Insufficient Defenses and Other Matter, Memorandum of Points and Authorities in Support of Motion to Strike Motion to Strike (sic) in response to one of dispositive motions ("Motion to Strike 1"), and later filed [30] Plaintiff's Motion to Strike Insufficient Defenses and Other Matter and Memorandum of Points and Authorities in Support of Plaintiff's Motion to Strike in response to the other two dispositive motions ("Motion to Strike 2").  All Defendants filed memoranda in opposition to Plaintiff's Motions to Strike.  *See* docket entries [24], [31], and [32].

Finally, Plaintiff filed [33] Motion for Leave to Amend Complaint and First Amended Verified Complaint and Demand for Jury Trial ("Motion to Amend").  All Defendants filed memoranda in opposition to Plaintiff's Motion to Amend.  *See* docket entries [34], [35], and [36].

After considering the aforementioned documents, the Complaint, and the relevant case law, the Court shall GRANT all three of Defendants' dispositive motions; DENY both of Plaintiff's Motions to Strike; and DENY Plaintiff's Motion to Amend.

## I: BACKGROUND

As a preliminary matter, the Court notes that the facts in this case were in large part litigated in or a product of civil case proceedings before the District Court of Charles County, Maryland, wherein Plaintiff in the instant case was held liable for breach of contract.  *See Washington Gas Light Co. v. Alexander*, No. 622-04 (D.C. Charles County MD 2004), *aff'd*, No. C04-1466 (Cir. Ct. Charles County MD 2005).

Plaintiff signed a contract in Rockville, Maryland, with Combustioneer Corporation on November 2, 1998, for the purchase and installation of twelve gas-fired furnaces; Washington

Gas Light Company ("WGL") was the assignee on the contract.  Compl. ¶ 18; WGL's Disp. Mot. Exh. 1 at 8 (Contract).[1]  While Plaintiff then resided in Upper Marlboro, Maryland, the furnaces were to be installed in property located in Washington, D.C.; Washington, D.C. was the principal place of business of a limited liability company named Jordan Apartments, L.L.C., of which Plaintiff was the registered agent.  Pl.'s Compl. ¶ 18; WGL's Disp. Mot. Exh. 1 at 8 (Contract); WGL's Disp. Mot. Exh. 5 at 15 (Art. of Org.).  Plaintiff provided his social security number to WGL in a credit application related to the instant contract.  WGL's Disp. Mot. at 5.  Under the terms of the contract, Plaintiff was required to pay a total of $17,107.63 (including the amount financed as well as finance charges) to WGL via monthly payments over the course of 60 months starting in December of 1998.  Pl.'s Compl. ¶ 19; WGL's Disp. Mot. Exh. 1 at 8 (Contract).  Plaintiff signed the contract in his individual capacity without any reference to Jordan Apartments.  WGL's Disp. Mot. Exh. 1 at 8 (Contract).

Plaintiff signed a "Statement of Installation Completion" on November 15, 1998, indicating that the equipment subject to the contract had been installed.  Compl. ¶ 21.  However, while Plaintiff admits to receiving monthly invoices, he does not contest that he did not make any payments on the contract.  Compl. ¶¶ 25, 27.  WGL reported information about Plaintiff's account to Equifax from December 1998 to September 2004.  WGL's Disp. Mot. at 5.  WGL also placed Plaintiff's account with Compu-Link (d/b/a Celink), which contracted with WGL to provide loan administration services such as monthly billing, collection and remittance of

---

[1]  The Court throughout this memorandum opinion refers only to documents in Defendants' exhibits which have also been provided by Plaintiff as attachments to his Motion to Amend Complaint.  Since Plaintiff attached a voluminous quantity of documents as one exhibit, the Court shall for the sake of clarity refer to exhibit numbers corresponding with Defendants' dispositive motions.

payments on contracts financed by WGL.  WGL's Disp. Mot. at 5.  Defendant John LaRose is

owner and CEO of Compu-link.  Compu-Link's Disp. Mot. at 3.  Plaintiff does not dispute that

Compu-Link only serviced the loan between March and October of 2003.  *Id.*

WGL filed a complaint against Plaintiff[2] in the District Court for Prince George's County,

Maryland, on December 9, 2003, asking the court to award WGL the amount of

$17, 107.63 for Plaintiff's breach of contract plus post-judgment interest, reasonable attorneys

fees, and court costs.  WGL's Disp. Mot. at Exh. 1 (WGL Compl.).  Defendant Paul H. Teague

acted as WGL's attorney in that action.  *Id.*  Plaintiff filed a motion to dismiss in that action on

January 24, 2004.  Because Plaintiff mentioned therein that he in fact resided in Waldorf,

Maryland, and was therefore a resident of Charles County, Maryland, the District Court

construed Plaintiff's motion as a motion to transfer and transferred the case to the District Court

for Charles County, Maryland, despite denying the motion on its merits.  WGL's Disp. Mot. at

Exh. 2, 3.

Plaintiff filed a motion to dismiss on March 25, 2004, after the case was transferred.

WGL's Disp. Mot. at Exh. 5.  In Plaintiff's motion to dismiss, he alleged that WGL's claim

against him was time-barred by Maryland's four-year statute of limitations period as set forth in

Maryland Code § 2-725; that Plaintiff never entered into a contract with WGL because Jordan

Apartments rather than Plaintiff entered into the contract at issue; that venue in Charles County

was improper because Jordan Apartments was registered in Washington, D.C.; that WGL's

claims were barred by res judicata because of Plaintiff's bankruptcy proceedings; and that

---

[2] Despite Alexander's status as the defendant in state court proceedings against him in Maryland, he will be referred to as "Plaintiff" throughout this memorandum opinion.

Plaintiff's sole existing property interests were exempt from legal process by 5 U.S.C. § 8470 and 10 U.S.C. § 1440. *Id.* Plaintiff also filed a motion for summary judgment on April 13, 2004, reasserting his statute of limitations argument that WGL filed suit more than four years after the date of the breach of contract, which he defined as the date his first payment had been due (December 1998). WGL's Disp. Mot. at Exh. 6.

At trial,[3] Judge Gary S. Gasparovic denied Plaintiff's motions and awarded judgment to WGL in the amount of $17,107.63 plus attorneys fees and costs. WGL's Disp. Mot. at Exh. 7 (Trial transcript). During trial, Plaintiff admitted that his signature was the only signature on the contract as a buyer and the debtor. *Id.* (Trial transcript at 26). The Court made the following statements and/or findings of fact during the course of the trial: 1) WGL did not avail itself of its contractual option to accelerate such that Plaintiff's final payment due date was the date from which the statute of limitations period would begin to toll (and consequently, suit was filed within the appropriate time period); 2) the annuity issue could be considered in the rubric of a post-judgment remedy and was not relevant at the juncture of trial; 3) the contract was signed by Plaintiff in his individual capacity; 4) the work contracted for was performed, no payments were made, and there was a balance due and owing of $17,107.63; and 5) "[Alexander] has not met any burden of proof of showing that this debt was discharged by the bankruptcy order that he says occurred on October the 5th of 1999." *Id.* (Trial transcript at 30–31, 34, 42–44). While Plaintiff filed a motion on May 3, 2004, seeking to alter or amend the trial court's judgment or for a new trial, the motion was denied. WGL's Disp. Mot. at Exh. 9, 10.

---

[3] The Court notes that the only witness called by WGL at trial was Ted Bonora, who is named as a Defendant in this case.

Plaintiff appealed to the Circuit Court for Charles County, Maryland, timely filing a memorandum in support of his appeal.  WGL's Disp. Mot. at Exh. 12.  Plaintiff's grounds for appeal were that the trial court erred in denying Plaintiff's request for hearings related to his motion to dismiss and motion for summary judgment; and that based on the statute of limitations issue raised by Plaintiff, the trial court abused its discretion in denying Plaintiff's motion for summary judgment.  *Id.*  The Circuit Court for Charles County, Maryland affirmed the judgment, holding that the District Court did not err in not holding pre-trial hearings on Plaintiff's motions; the District Court did not err in withholding ruling on Plaintiff's pre-trial motions until after hearing the evidence and consequently denying the motions; and the District Court's factual finding that there was no acceleration of the debt obligation and thus no statute of limitations issue was well-supported by evidence presented during the trial.  WGL's Disp. Mot. at Exh. 13.  Plaintiff does not dispute that he did not pursue an appeal of the Circuit Court order affirming the District Court judgment.  *Id.* at 5.

In June 2004, WGL referred judgment against Plaintiff to the law firm Stanbury & Kish, LLC, for enforcement action.  *Id.*  Plaintiff does not contest that WGL has not collected, nor has Plaintiff actually paid, any amount of money toward the judgment balance.  *Id.*  It should be noted that Plaintiff receives both civil service and military annuity payments as his present form of income.  Compl. ¶¶ 50, 51.  Stanbury & Kish initiated post-judgment procedures against Plaintiff, including but not limited to special interrogatories, an oral examination for the benefit of creditors, and attachment of Plaintiff's assets.  Stanbury's Disp. Mot. at 2–3.  Plaintiff filed "Motion for Release of Property from Levy and Request for Hearing," on July 7, 2004, in which he raised arguments under 5 U.S.C. § 8410 *et seq.* and 10 U.S.C. § *et seq.* as to why Plaintiff's

6

property should be exempt from levy.  Am. Compl. at Exh. 1.[4]  The Charles County court issued

a corresponding court order, dated May 2, 2005, which states "[Alexander's] motion for release

of property from levy is denied.  No assets of [Alexander] have been attached.  Issue is moot."

*Id.*

Plaintiff filed a Complaint with the instant court on May 6, 2005.  While Plaintiff's

claims are set forth in Section III, the Court here notes that Plaintiff requests the following

forms of relief in his Complaint:  a declaration of Defendant's liability; injunctive relief; actual,

compensatory, punitive, and special damages to be determined by a jury; appropriate attorneys

fees; reasonable costs; and any further relief the Court may require.  Compl. at 23–24.

## II: LEGAL STANDARD

### A.      Motion to Dismiss

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the Court

must construe the complaint in the light most favorable to plaintiff and must accept as true all

reasonable factual inferences drawn from well-pleaded factual allegations."  *In re United Mine*

*Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also*

*Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally

construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be

derived from the facts alleged.").  While the Court must construe the complaint in the Plaintiff's

favor, it "need not accept inferences drawn by [the] plaintif[f] if such inferences are unsupported

by the facts set out in the complaint."  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271,

---

[4]  Due to the size of Plaintiff's Exhibit, the Exhibit was designated a "bulky exhibit" by the Clerk's Office
such that it is available for public viewing and copying in the Clerk's Office but is not available electronically on
ECF.  *See* Docket Entry [33], Attachment 2.

1276 (D.C. Cir. 1994).  Moreover, the Court is not bound to accept the legal conclusions of the

non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).  The Court is

limited to considering facts alleged in the complaint, any documents attached to or incorporated

in the complaint, matters of which the court may take judicial notice, and matters of public

record.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997);

*Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule

12(b)(6) motion, particularly when the facts they contain contradict those alleged in the

complaint.  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v.

Pelletier*, 516 U.S. 299, 309 (1996) (when a motion to dismiss is based on the complaint, the

facts alleged in the complaint control).

      *B.*     *Summary Judgment*

      A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635,

638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendants, as the moving

parties, bear the "initial responsibility of informing the district court of the basis for [their]

motion[s], and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which [they]

believ[e] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (citation omitted).  Plaintiff, in response to Defendants' motions, must

"go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242–43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III:  DISCUSSION

The Court begins its discussion of the three dispositive motions at issue by noting that this Court strictly adheres to the text of Local Civil Rule 56.1 (identical to Local Civil Rule 7.1(h)).  According to Local Rule 56.1, the moving party to a summary judgment motion is required to separately provide  "a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  LCvR 56.1.  None of the Defendants, in their three dispositive motions, explicitly complied with this mandate and instead include such statements in their memoranda.

Defendants' deviation from the intent of the Local Civil Rule undermines the purpose of the Rule, which is to assist the Court in quickly determining if any facts are actually in dispute. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996) ("[R]epeatedly blending factual assertions with legal argument, the 'relevant facts' section does not satisfy the purposes of a [Rule 56.1] statement."); *Robertson v. Am. Airlines*, 239 F. Supp. 2d 5 (D.D.C. 2002) (striking defendant's motion for summary judgment for noncompliance with Local Rule 7 and 56.1 because the "statement of material facts not in genuine dispute" included no citations to the record and improperly mixed factual allegations with argument).

While the purpose of Rule 56.1 was to "plac[e] the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record," *Finnegan*, 101 F.3d at 151, the Court shall accept the additional burden placed on it in this instance by Defendants and distill and compare the facts delineated in Defendants' dispositive motions as compared to those

delineated in Plaintiff's Complaint and Motions to Strike when considering Defendants' dispositive motions.  In so doing, the Court has determined that Plaintiff's claims, which will be addressed below in turn, cannot survive summary judgment.

Alternatively, the Court may consider Defendants' filings as motions to dismiss under the standard set forth in Federal Rule of Civil Procedure 12(b)(6) because Defendants filed their dispositive motions as motions for summary judgment or motions to dismiss in the alternative. Accordingly, if the Court were to consider only facts set forth in the Complaint, matters of public record (including judicial transcripts, pleadings, and orders from a prior civil case[5]), and matters of which the Court may take judicial notice, the Court would still determine that Plaintiff failed to state any claim such that Plaintiff's Complaint in its entirety must be dismissed as to all Defendants.

A.      *Plaintiff's First Claim for Relief*

Plaintiff's first claim for relief is brought under 42 U.S.C. § 1983, alleging that all Defendants (with the exception of LaRose and Celink) served as state actors and violated Plaintiff's Fourth and Fourteenth Amendment rights to timely notice and due process of law in their "unlawful" seizure and conversion of Plaintiff's property.  Compl. ¶¶ 15–34.  Plaintiff also

---

[5]  The Court notes that both Plaintiff and Defendants have submitted the unsealed transcript of the proceedings in *Washington Gas Light Co. v. Samuel L. Alexander* (Civil Case No. 622-04) before Judge Gary S. Gasparovic in the District Court for Charles County, Maryland, on April 21, 2004; Plaintiff's various filings in that case; and related orders issued by both the district and appellate courts in that case, all of which may be considered matters of public record.  *See In re Thomas H.*, 381 Md. 174, 187 n.4 (2004) (holding that a notice, because it was docketed, should be considered a matter of public record); *Walker v. Warden of Maryland House of Corr.*, 209 Md. 654, 655 (1956).

alleges that the District Court for Charles County lacked personal jurisdiction over Plaintiff

because while Plaintiff's personal residence was located in Charles County, Maryland, the

"alleged" breach of contract occurred in Washington, D.C.  Compl. ¶¶ 29–30.  Furthermore,

Plaintiff alleges that the District Court for Charles County lacked subject matter jurisdiction

over Plaintiff because the action against Plaintiff should have been time-barred "in the fact of

defendant's admission that the alleged breach of the 1998 Contract by plaintiff occurred five (5)

years earlier."  Compl. ¶ 31.

### 1.    *42 U.S.C. § 1983*

While Plaintiff has not proffered any facts suggesting that Plaintiff's property has

actually been seized and/or converted (as Plaintiff does not contest that WGL has not yet

received payment on the judgment issued against Plaintiff), Plaintiff also has not pled any facts

suggesting that an action can be brought under 42 U.S.C. § 1983 against any of the Defendants.

In order for an action to fall within the rubric of 42 U.S.C. § 1983, such action must be taken

"under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or

the District of Columbia."  42 U.S.C. § 1983.  An individual alleging a violation of Section

1983 must demonstrate that the alleged deprivation of constitutional rights was committed by a

person or entity acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Hoai v.*

*Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991).

Plaintiff does not refute Defendants' statements that they are not state actors and thus

cannot be sued under Section 1983.  *See* WGL's Disp. Mot. at 13–15; Compu-Link's Disp. Mot.

at 10; Stanbury's Disp. Mot. at 6–7.  Additionally, upon analyzing the relevant case law, the

Court has determined that Plaintiff has not proffered any facts showing that any Defendants can be sued under Section 1983. While Plaintiff names all Defendants as "state actors" (except for LaRose and Celink), *see* Compl. ¶ 16, he describes all named Defendants in his Complaint as either for-profit corporations or employees or agents of for-profit corporations. *See* Compl. ¶¶ 6-14. While Plaintiff states that WGL is also a "gas utility regulated by the appropriate Public Service Commission [in Maryland, DC, and Virginia]," and describes Defendants Bonora and Teague as acting on behalf of WGL, Plaintiff has not pled facts sufficient to establish that these Defendants were acting as "state actors" under the auspices of 42 U.S.C. § 1983. The Supreme Court established in *Jackson v. Metropolitan Edison* that a state-regulated utility would not be considered a "state actor" absent a showing of "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). This Court agrees with the WGL Defendants' assessment that "[i]n this case*, as in *Taylor*, there is no evidence that the state formulated, or is in any way responsible for, Washington Gas' enforcement and collection of debt owed on merchandise contracts. As such, the actions of Washington Gas, Bonora and Teague cannot be deemed 'state action'." WGL's Disp. Mot. at 14 (citing *Taylor v. Consolidated Edison Co.*, 552 F.2d 39, 46 (2d Cir. 1977)). Because Plaintiff has not demonstrated either that his property has actually been seized or converted nor pled any facts suggesting that any of the Defendants in this case are state actors who may be subject to a claim brought under 42 U.S.C. § 1983, Plaintiff's claims brought pursuant to this statute should be dismissed.

2.      *Personal and Subject Matter Jurisdiction*

Plaintiff's claims that the District Court of Charles County lacked personal and subject matter jurisdiction over Plaintiff are barred under the principles of res judicata and collateral estoppel. The District Court of Charles County already passed judgment on these issues, which were raised by Plaintiff in proceedings before that court. Furthermore, the Circuit Court for Charles County, Maryland reviewed and affirmed the District Court's judgment. Plaintiff did not timely appeal the Circuit Court judgment and cannot properly do so at this time in Maryland or through a collateral attack in this Court.

a.      Res Judicata

Under Maryland law,[6] res judicata (otherwise known as claim preclusion) applies such that the final judgment in one case precludes litigating a subsequent claim when the following conditions are met: (1) the parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2) the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) there was a final valid judgment on the merits in the earlier dispute. *Douglas v. First Sec. Fed. Sav. Bank*, 101 Md. App. 170, 181 (1994). S*ee also Sheahy v. Primus Auto. Fin. Services.*, 284 F. Supp. 2d 278, 280 (D. Md. 2003) (citing *Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371 (2000)). Plaintiff does not dispute the WGL Defendants' argument that the claims against them fit within this rubric based on the affirmed, Charles County judgment holding Plaintiff liable to WGL despite the personal and

---

[6]  A federal court should rely on the preclusion law of the state in which a judgment was issued to determine the res judicata or collateral estoppel effects of such judgment. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 407 U.S. 373, 380–382 (1985); *Rourke v. AmChem Products, Inc.*, 384 Md. 329, 344, 347–48 (2004). Thus, the instant Court must turn to Maryland state law regarding the principles of res judicata and collateral estoppel that should be applied to the Charles County judgment.

14

subject matter jurisdiction arguments he raised therein.  *See* WGL's Disp. Mot. 9–11.  Plaintiff

does, however, make a general argument in his Motion to Strike that the "Rooker-Feldman"

doctrine should not be applied to the case at bar for public policy reasons, citing *Exxon Mobil v.*

*SBIC.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005).  However,

this Court's analysis of *Exxon* reveals that *Exxon* discusses the limits of res judicata as applied

to parallel federal and state court proceedings.  In fact, the Supreme Court explicitly states in

*Exxon* that the instant case–one in which a state court "loser" brings an action in federal court

contesting the state court judgment–is precisely the sort of case in which res judicata should

apply.  "The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from

which the doctrine acquired its name: cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments."  *Exxon*, 544 U.S. at 1511-12

(2005).

### b.      Collateral Estoppel

In Maryland, the principles of collateral estoppel are set forth as follows with regards to

litigation involving the same parties:  "When an issue of fact or law is actually litigated and

determined by a valid and final judgment, and the determination is essential to the judgment, the

determination is conclusive in a subsequent action between the parties, whether on the same or a

different claim."  *Murray Int'l Freight Co. v. Graham*, 315 Md. 543, 547 (1989) (quoting

Restatement (Second) of Judgments § 27).  Where the party asserting collateral estoppel was not

a party to the original action, the following principle applies: "A party precluded from

15

relitigating an issue with an opposing party, in accordance with §§ 27 and 28 [of the Restatement], is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue."  Restatement (Second) of Judgments § 29. In order to invoke the doctrine of non-mutual collateral estoppel, Defendants must show that (1) the issue decided in the prior adjudication is identical with the one presented in the action in question; (2) there was a final judgment on the merits; (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom estoppel is asserted was given a fair opportunity to be heard on the issue.  *See Leeds Federal Savings and Loan Assoc. v. Metcalf*, 332 Md. 107, 117–18 (1993); Compu-Link's Disp. Mot. at 14.

The WGL Defendants, in their dispositive motion, claim that to the extent that any claims against them are not precluded by res judicata, collateral estoppel would apply to preclude such claims; they and all other Defendants claim that collateral estoppel would generally preclude relitigation of the following factual determinations made in the Charles County litigation: (1) Plaintiff was the debtor under the 1998 Contract; (2) Plaintiff signed the Contract in his individual capacity; (3) Plaintiff owes WGL $17,107.63; (4) WGL's claims were not time-barred; (5) Plaintiff's alleged bankruptcy did not include the debt owed to WGL; and (6) Venue was proper in the Charles County District Court.  WGL's Disp. Mot. at 11–12.  As these issues have already been decided against Plaintiff by the District Court for Charles County, and because Plaintiff actually raised these issues and thereby exercised his full and fair opportunity to contest them, this Court should not engage in an analysis of what essentially

16

amounts to a collateral attack upon the District Court of Charles County's judgment. "Judgments of a legally organized judicial tribunal, proceeding within the scope of its alloted (sic) powers, and possessing the requisite jurisdiction over the subject matter of the suit and the parties thereto, whether correct or erroneous, cannot be called in question by the parties or privies in any collateral action or proceeding." *Klein v. Whitehead*, 40 Md. App. 1, 20 (1978) (citation omitted).

Thus, based on the principles of res judicata and collateral estoppel, and refusing to engage in a collateral attack on a valid judgment, the instant Court will not revisit the questions of personal and subject matter jurisdiction addressed and ultimately decided in the Maryland court proceedings–namely, that the District Court for Charles County was a proper venue to bring action against Plaintiff because Plaintiff resided in and signed the contract in Maryland, and that the claims against Plaintiff were not time-barred because WGL had not exercised the option of accelerating payment of the debt owed to it. Merely as a matter of observation, the instant Court also notes that based on the record before it, it would not have *any* grounds to question the jurisdiction exercised by the District Court for Charles County.

B.      *Plaintiff's Second Claim for Relief*

Plaintiff's second claim for relief includes claims against all Defendants except for LaRose and Celink under 42 U.S.C. §§ 1981, 1983, 1985; Maryland Rules 3-308 and 3-311; and 18 U.S.C. § 241. Compl. ¶¶ 35–46. Plaintiff alleges that "the defendants conspired and acted in perfect concert with the Charles County Court bench so as to defeat and or otherwise deny plaintiff rights provided by law," including due process and equal protection rights under the

17

Fourth and Fourteenth Amendments; his right to sue, make, and enforce contracts; and his alleged right to a hearing under various Maryland Rules.  Compl. ¶¶ 40, 41, 44, 45. Furthermore, Plaintiff claims that

> [t]he conspiracy was overtly manifested when, during the April 21, 2004 merit trial of defendants' breach of contract claims, the defendants remained silent while the Charles County District Court Bench demonstrated animus toward plaintiff and partiality to defendants and their claims in its inappropriate, willful violation of custom, procedure and law by arguing the defendants' cause of action with respect to venue and jurisdiction and providing illegal orders to defendants to seize plaintiff's property.

Compl. ¶ 43.   While Defendants refute Plaintiff's ability to bring claims under any of the statutes and rules listed above, Plaintiff offers no counter-argument such that on that basis alone, summary judgment should be granted to Defendants on Plaintiff's second claim for relief. Regardless, the Court will address each statutory and/or regulatory basis for relief raised by Plaintiff to demonstrate that Plaintiff fails to state any claim upon which relief can be granted in his Complaint.

As stated in Section III(A), Plaintiff cannot bring a claim under 42 U.S.C. § 1983 against any of the Defendants because of the absence of state action in this case.  *See supra* § III(A). Plaintiff also cannot bring a claim pursuant to 42 U.S.C. § 1981[7] because § 1981 does not apply to breach of contract claims or to conduct which occurs after the formation of a contract.  *See* WGL's Disp. Mot. at 13 n. 4; *Wiggins v. Hitchens*, 853 F. Supp. 505, 510 (D.D.C. 1994). Furthermore, Plaintiff failed to plead facts necessary to establish a prima facie case under

---

[7] Pursuant to 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

Section 1981.  Stanbury's Disp. Mot. at 5; *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990) ("In order to pursue a cause of action under § 1981, plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief.  Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions." (citations omitted)).  Plaintiff, while stating in his Amended Complaint (though not in his original and presently operative Complaint), that he is African-American, *see* Am. Compl. ¶ 56, has not pled any facts or made any suggestion of racially discriminatory motive on the part of Defendants.  As such, Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1981.

Regarding Plaintiff's claim pursuant to 42 U.S.C. § 1985, Plaintiff has failed to refute Defendants' arguments as to why any conspiracy claim brought by Plaintiff under Section 1985 should fail.  *See* WGL's Disp. Mot. at 15–16; Compu-Link's Disp. Mot. at 10–11; Stanbury's Disp. Mot. at 7–9.  The Court's analysis of the law also highlights Plaintiff's failure to bring a viable claim under this statute.  In order to pursue a claim under § 1985(3), Plaintiff must show "(1) an act in furtherance of (2) a conspiracy (3) to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Wiggins v. Philip Morris, Inc.*, 853 F.Supp. 470, 479 –80 (D.D.C. 1994).  *See also Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).  "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Novotny*, 42 U.S. at 372.  "There can be no recovery under § 1985(3) absent a violation of a substantive federal right." *Wiggins v. Hitchens*, 853 F.Supp. 505, 511 (D.D.C. 1994).  Furthermore, 42 U.S.C. § 1985 applies only to conspiracies motivated by some class-based, discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971).  Because Plaintiff

19

cannot demonstrate that any substantive federal right has been violated, nor does Plaintiff state the requisite elements of a conspiracy motivated by discriminatory animus[8] or show any acts that constitute the furtherance thereof,[9] Plaintiff's Section 1985 claim fails as a matter of law.

The instant Court cannot find any basis for Plaintiff to bring suit under Maryland Rules 3-308 and 3-311.  Pursuant to Maryland Rule 3-308, "Upon motion of a party upon whom a specific demand for proof is made, the court may continue the trial for a reasonable time to enable the party to obtain the demanded proof."  The instant Court fails to see how this provides any basis for relief for Plaintiff, nor has Plaintiff pled any facts to assist the Court in unearthing a claim with regard to this Rule.  Maryland Rule 3-311, which addresses pleadings and motions, did not require the Charles County Court to grant Plaintiff a hearing on his motions as Plaintiff claims, *see* Compl. ¶ 41, as the Rule states that a hearing is required only if the trial court grants a motion for a new trial or to amend judgment.  Md. Rule 3-311(d).  Furthermore, the Circuit Court for Charles County already upheld the District Court's decision not to grant Plaintiff a post-judgment hearing–that decision may not be collaterally attacked in this Court.  *See supra* § III(A).

---

[8]  Indeed, Plaintiff failed to plead any facts in his Complaint that would indicate that Plaintiff even belonged to a class on the basis of which a Section 1983 or 1985 claim could be brought.  While Plaintiff indicates in the his Amended Complaint that he is African-American, *see* Am. Compl. ¶ 56, he does not anywhere in his Amended Complaint suggest that Defendants' alleged actions "against" him were racially-motivated.

[9]  The only act alleged by Plaintiff that the Court could possibly construe as an attempt by Plaintiff to plead an act that is "conspiratorial" in nature is the fact that "defendants remained silent while the Charles County District Court Bench demonstrated animus toward plaintiff and partiality to defendants and their claims in its inappropriate, willful violation of custom, procedure and law by arguing the defendants' cause of action with respect to venue and jurisdiction and providing illegal orders to defendants to seize plaintiff's property."  Compl. ¶ 43.  This allegation does not demonstrate discriminatory animus, nor does Plaintiff show how "remaining silent" either constitute a conspiratorial act in this case nor how it would apply to any but the WGL Defendants.

Finally, 18 U.S.C. § 241 is a criminal statute that provides no basis for an individual to bring a private, civil action. *See Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996) (explicitly holding that 18 U.S.C. § 241 does not create a private cause of action); *Wiggins v. Hitchens*, 853 F. Supp. 505, 511 (D.D.C. 1994) (holding that a criminal statute does not provide a corresponding civil cause of action); 18 U.S.C. § 241, Notes of Decisions fn. 33. Thus, because Plaintiff does not plead any facts sufficient to state a claim under the legal bases he proposes, Plaintiff's second claim should be dismissed in its entirety as to all Defendants for failure to state any claim on which relief may be granted.

C.     *Plaintiff's Third Claim for Relief*

Plaintiff's third claim for relief contends that all Defendants excepting LaRose and Celink violated Plaintiff's rights under 5 U.S.C. § 8470 and 10 U.S.C. § 1440 "when they conspired and obtained an illegal garnishment order and seized and converted plaintiff's Federally-protected annuities for their own use." Compl. ¶¶ 47–55. Plaintiff specifically references civil service annuity payments he has received subsequent to his retirement from the Federal Civil Service on March 9, 2001, as well as military annuity payments he has received subsequent to his retirement from the U.S. Army on November 20, 2003. Compl. ¶¶ 50–51.

Pursuant to 5 U.S.C. § 8470(a), "An amount payable under subchapter II, IV, or V of this chapter is not assignable, either in law or equity, except under the provisions of section 8464 or 8476, or subject to execution, levy, attachment, garnishment or other legal process, except as otherwise may be provided by Federal laws . . . ." Pursuant to 10 U.S.C. § 1440, "Except as provided in section 1437(c)(3)(B) of this title, no annuity payable under this

21

subchapter is assignable or subject to execution, levy, attachment, garnishment, or other legal process." Collectively, these statutes stand for the proposition that a creditor may not directly garnish annuity payments.

Plaintiff failed to refute Defendants' arguments that neither statute creates a private right of action. Plaintiff also failed to refute Defendants' arguments that garnishment of Plaintiff's bank account, to which the annuities are deposited, would not constitute a violation of the statutes above even if a private cause of action did exist. *See* WGL's Disp. Mot. at 16–17; Stanbury's Disp. Mot. at 9–10. Upon analyzing the relevant statutes and case law, the Court agrees that the statutes at issue may not be invoked by Plaintiff in the instant case.

The Subchapter in which 10 U.S.C. § 1440 is found is entitled "Retired Serviceman's Family Protection Plan," and the annuity it references becomes payable only when a retired member of the armed forces dies. *In re Meyer*, 211 B.R. 203, 209 n.7 (Bankr. E.D. Va. 1997) ("[I]t is clear that 10 U.S.C. § 1440 is not directed at retired pay but at the survivor annuity that becomes payable after the electing service member's death. Accordingly, the debtor's reliance on 10 U.S.C. § 1440 as not permitting attachment or garnishment of his retired pay is misplaced."). *See also Gaudion v. Gaudion*, 601 S.W.2d 805, 808 (Tex. Civ. App. 1980). Plaintiff's reliance on 10 U.S.C. § 1440 is thus similarly misplaced in this case.

Furthermore, while Plaintiff alleges in his Complaint that "defendants willfully and maliciously violated plaintiff's rights when they conspire and obtained an illegal garnishment order and seized and converted plaintiff's Federally-protected annuities for their own use," Plaintiff provided no specific evidence that any of his assets have actually been transferred to

22

any of the Defendants in this case.  In fact, Plaintiff has already litigated this issue before the

District Court for Charles County, as evidenced by the documents provided by Plaintiff as an

Exhibit to his Motion to Amend Complaint.  Plaintiff's Exhibit, which only includes documents

with the designated stamp "True Test Copy" affixed and signed by the Clerk, includes both his

"Motion for Release of Property from Levy and Request for Hearing," dated July 7, 2004, and

the corresponding court order, dated May 2, 2005, which states "[Alexander's] motion for

release of property from levy is denied.  No assets of [Alexander] have been attached.  Issue is

moot."  Consequently, Plaintiff has failed to state a claim under either 5 U.S.C. § 8470 or 10

U.S.C. § 1440.

      D.    *Plaintiff's Fourth Claim for Relief*

Plaintiff's fourth claim for relief contends that all Defendants excepting LaRose and

Celink violated 42 U.S.C. §§ 408(a)(8), 1983; 5 U.S.C. § 552; and 18 U.S.C. § 241 by

individually or collectively conspiring and allegedly "disclos[ing] plaintiff's SSN by publication

in public records, [using] plaintiff's SSN in connection with the filing of a time-barred

complaint in a Maryland Court and, accessing and publishing false information in plaintiff's

consumer credit file with three (3) major credit-reporting agencies (CRAs)" five years after

various Defendants were provided with Plaintiff's social security number for the purpose of

determining his creditworthiness.  Compl. ¶¶ 56–61.

As analyzed in Section III(A), Plaintiff cannot bring a cause of action pursuant to 42

U.S.C. § 1983 in the instant case.  As analyzed in Section III(B), Plaintiff cannot bring a private

civil cause of action pursuant to 18 U.S.C. § 241, which is a criminal statute.  Like 18 U.S.C. §

241, the other statute providing criminal penalties for certain acts–42 U.S.C. §§ 408(a)(8)–also

does not provide a basis for a private civil cause of action.  *See supra* § III(B).

Finally, 5 U.S.C. § 552, commonly known as the Freedom of Information Act, requires

that public agencies make public information available pursuant to various statutory rules and

requirements.  Plaintiff in the instant case does not plead facts sufficient to prove or otherwise

indicate that any of the Defendants in the instant case is a public agency such that he cannot

bring a claim pursuant to this statute.

Plaintiff has failed to state any claim upon which relief can be granted such that his

fourth claim is hereby dismissed in its entirety against all Defendants.

### E.      *Plaintiff's Fifth Claim for Relief*

Plaintiff alleges under his fifth claim that he was subjected to various common-law

torts–including abuse of process, invasion of privacy and defamation–at the hands of

Defendants.  The Court will examine each alleged tort in turn under Maryland state law.[10]

#### 1.      *Abuse of Process*

---

[10]  The instant Court applies Maryland state law to Plaintiff's common law tort claims under the following analysis.  The instant case was brought in U.S. District Court for the District of Columbia.  Federal courts in the District of Columbia are required to employ District of Columbia choice of law rules to resolve conflict of law questions.  *Perkins v. Marriott Int'l, Inc.*, 945 F. Supp. 282, 284 (D.D.C. 1996).  District of Columbia law requires the application of a "governmental interests analysis" in tort cases to determine which jurisdiction's substantive law controls.  *Id.*  In undertaking this analysis, a court should consider the following factors: (1) place where the injury occurred; (2) place where the conduct causing the injury occurred; (3) domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) place where the relationship is centered.  *Id.*; *Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 n.2 (D.C. 1985).  The fact that Plaintiff's domicile and residence are in Maryland; the judgment which Plaintiff contests as the basis for the majority of his claims was issued in Maryland by a Maryland state court; and the 1998 Contract was signed in Maryland prompt this Court to employ Maryland state tort law.  *See also* Stanbury's Disp. Mot. at 11 n.2.

Plaintiff alleges that Defendants WGL, Bonora, Teague, Stanbury, and Kish abused legal

process when they "willfully and maliciously breached their duty to [Plaintiff] when they

conspired and filed time-barred actions in a Maryland Court."  Compl. ¶¶  63, 64, 66.  In order

to sustain an abuse of process claim, Plaintiff must prove that process of the court was actually

abused or perverted once it has issued.  *Herring v. Citizens Bank & Trust Co.*, 21 Md. App. 517,

528–537 (1974).  Plaintiff must show the willful use of process after it was issued in a manner

not contemplated by law to satisfy an ulterior motive, and that damages resulted from the

perverted use of process.  *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 38 (1997);

*Keys v. Chrysler Credit Corp.*, 303 Md. 397, 411 (1985).  Since Plaintiff premises his claim on

Defendants' *filing* of actions in Maryland, he clearly does not proffer facts relevant to process

that has been issued such that he has failed to state a claim upon which relief may be granted.

Furthermore, it has already been established by a court of competent jurisdiction–the District

Court of Charles County–that the actions filed were not time-barred as argued by Plaintiff under

this claim.  *See supra* Section III(A).

2.     *Invasion of Privacy and Defamation*

Plaintiff raises a litany of claims against Defendants related to inclusion of his overdue

debt relating to the 1998 Contract in Plaintiff's consumer credit files.  Compl. ¶¶ 67– 110.

Plaintiff alleges that Defendant A.C.&S illegally accessed Plaintiff's credit file on or about June

2004.  Compl. ¶ 90.  Plaintiff also alleges that Defendants Bonora and Teague, Stanbury and

Kish (including WGL, A.C.&S, and Kish, LLC under the doctrine of respondeat superior or

agency by estoppel), and LaRose (including WGL and Compu-Link under the doctrine of

respondeat superior or agency by estoppel) conspired and colluded with other Defendants to "deny plaintiff his privacy and other rights through a campaign of intentional malicious behavior including but not limited to unjust harassment, defamation and or presentation of plaintiff in a false light" by (1) accessing Plaintiff's consumer credit record in the name of others (all); (2) publicizing or causing the publication of Plaintiff's consumer debt in major consumer credit reports (excluding Stanbury and Kish); (3) publicizing and or causing the publication of such indebtedness in public court records in Charles County, Maryland (excluding LaRose); (4) calling Plaintiff into court to publicly defend himself (excluding LaRose); (5) "illegally" accessing Plaintiff's bank account and seizing and converting Plaintiff's annuities (excluding LaRose); (6) publicizing or causing publication of Plaintiff's "alleged" indebtedness to his bank (excluding LaRose); and (7) "publicly serving Plaintiff with alleged legal process by local law enforcement in a close-knit neighborhood, on multiple occasions," (excluding LaRose).  Compl. ¶¶ 91, 96, 103.  Plaintiff alleges that the statements, publications, and other aforementioned activities by Defendants were knowingly false, misleading, or both as well as willful, unreasonable and malicious.  Compl. ¶ 92, 97, 104.  Finally, Plaintiff alleges that these activities constitute acts of fraudulent concealment (Bonora and Teague only), misrepresentation, conversion (Bonora and Teague only), fraud, deceit, negligent infliction of emotional distress, and intentional infliction of emotional distress.  Compl. ¶¶ 93, 94, 95, 98, 99, 100, 105, 106, 107.

Plaintiff, however, fails to plead facts and circumstances sufficient to sustain his alleged claims of invasion of privacy, defamation, fraudulent concealment, misrepresentation, conversion, fraud, deceit, negligent infliction of emotional distress, and intentional infliction of

emotional distress.  It should also be noted that Plaintiff did not rebut in any way Defendants'

arguments as to why Plaintiff cannot sustain a claim under any of the following common-law

grounds.  The Court will nonetheless examine each claim in turn.

### a.    Invasion of Privacy

Plaintiff constructs his invasion of privacy claim based on Defendants alleged

presentation of Plaintiff in a false light.  *See* Compl. ¶¶ 91, 96, 103.  In Maryland, in order to

sustain a false light claim, information must be published which is false or untrue that

unreasonably places the Plaintiff before the public in a false light.  *See Allen v. Bethlehem Steel*

*Corp.*, 76 Md. App. 642, 648 (1988).  However, the reported debt that Plaintiff alleges is false

has in fact been held to be true by the District Court for Charles County, Maryland, such that

Plaintiff is estopped from re-litigating this issue.  *See supra* § III(A).  Therefore, without

addressing the absolute judicial privilege arguments raised by various Defendants, *see*

Stanbury's Disp. Mot. at 13–14, the Court concludes that Plaintiff's common law invasion of

privacy claim fails as a matter of law based on the already-litigated truth of the statements at

issue.

### b.    Defamation

Under Maryland law, a private individual must demonstrate the following in order to

maintain a defamation action: (1) a defamatory communication (meaning one that exposes an

individual to public scorn, contempt, or ridicule); (2) falsity; (3) fault; and (4) harm.  *Peroutka*

*v. Streng,* 116 Md. App. 301, 311 (1997); *Gooch v. Md. Mech. Sys., Inc.*, 81 Md. App. 376, 391

(1990).  Plaintiff cannot in good faith contest "falsity" regarding the reporting of Plaintiff's debt, since such debt has been established as fact by the District Court for Charles County and Plaintiff is estopped from relitigating the issue.  *See* Section III(A).  The Court need not examine the fault and harm factors in determining that Plaintiff has not adequately pled a defamation claim against any of the Defendants.

Furthermore, Plaintiff is barred from bringing a defamation claim under the statute of limitations set forth by Maryland law.  Pursuant to Maryland Courts and Judicial Procedure Code Annotated § 5-105, "[a]n action for assault, libel, or slander shall be filed within one year from the date it accrues."  *Id*.  The cause of action for the purposes of statute of limitations requirements "accrues when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff."  *Sears, Roebuck & Co. v. Ulman*, 287 Md. 397, 401 (1980).  Since Plaintiff alleges that he first discovered the allegedly false publications in his credit reports in the summer and fall of 2003,[11] the instant Complaint, filed in May of 2005, was filed after the statute of limitations had expired even if Plaintiff's defamation claim had been found to have merit (which it does not).

> c.    *Misrepresentation, Fraud, Deceit, Fraudulent Concealment, and Conversion*

Plaintiff includes this laundry list of torts in his Complaint without any reference to the elements of each claim.  The Court will attempt to parse out what facts Plaintiff attempts to attribute to each common-law tort, the necessary elements for which will be provided by the

---

[11] *See* Compl. ¶¶ 69, 72, 75, 76.

Court.

In order to recover damages in a fraud, deceit, or misrepresentation claim, Plaintiff must prove "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Ellerin v. Fairfax Sav. Bank, F.S.B.*, 337 Md. 216, 229 (1995) (citations omitted); Compu-Link's Disp. Mot. at 17. However, the information regarding Plaintiff's debt at the crux of Plaintiff's claim has been established to be true by the District Court of Charles County such that Plaintiff is estopped from re-litigating this issue. Furthermore, since Plaintiff's debt in this regard was established in a Maryland state court proceeding, Plaintiff's fraud, deceit, and misrepresentation claims constitute an impermissible collateral attack upon the affirmed Charles County District Court Judgment. *See Klein v. Whitehead*, 40 Md. App. 1, 22 (1978); *supra* § III(A). Plaintiff has not pled any viable facts suggesting that any untrue statement was made to Plaintiff by any Defendants in this case; accordingly, he has not satisfied any of the other elements delineated in *Ellerin* and thus has failed to state a claim on which relief can be granted with respect to fraud, deceit, or misrepresentation.

"The elements for a claim of fraudulent concealment are: (1) [T]he defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in

justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the

defendant's concealment." *Hogan v. Md. State Dental Ass'n*, 155 Md. App. 556, 566 (2004)

(citing *Green v. H & R Block, Inc.,* 355 Md. 488, 525 (1999)).  Plaintiff has not pled any facts

indicating that Defendants failed to disclose any facts to Plaintiff which they had some duty to

disclose, that Defendants intended to defraud or deceive Plaintiff, that Plaintiff took justifiable

reliance on Defendants based on the concealment, or that Plaintiff suffered damages as a result

of any concealment.  Consequently, Plaintiff has failed to state the factual elements necessary to

support a  fraudulent concealment claim under Maryland law.

Conversion is an intentional tort which consists of two elements: a physical act and a

state of mind. *Darcars Motors of Silver Springs, Inc. v. Borzym*, 379 Md. 249, 261 (2004).

"The physical act can be summarized as 'any distinct act of ownership or dominion exerted by

one person over the personal property of another in denial of his right or inconsistent with it.'"

*Id.* (quoting *Allied Inv. Corp. v. Jasen,* 354 Md. 547, 560 (1999) (quoting *Interstate Ins. Co. v.

Logan,* 205 Md. 583, 588-89 (1954))).  With regards to the required intent element, "[a]t a

minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or

control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Darcars Motors*,

379 Md. at 262 (quoting *Keys v. Chrysler Credit Corp.,* 303 Md. 397, 414, 494 (1985)).  In the

instant case, even if garnishment of Plaintiff's bank account is considered a physical act

sufficient to meet the physical element requirement of the tort of conversion, Plaintiff cannot

demonstrate that any Defendants have acted in a manner that is inconsistent with Plaintiff's

rights.  As stated a number of times throughout this opinion, but repeated here for clarity, the

affirmed judgment of the District Court of Charles County entitled certain of Defendants to

collect from Plaintiff the monetary judgment based on his breach of contract.  Thus, attempts by

WGL's agents to collect the debt from Plaintiff to which WGL is rightfully entitled are not

inconsistent with Plaintiff's rights.  Because Plaintiff has not pled any viable facts

demonstrating that any of the Defendants have committed the tort of conversion under Maryland

law, any attempt by Plaintiff to sustain a conversion claim fails.

> d.    *Negligent Infliction of Emotional Distress*

Because there is no tort for negligent infliction of emotional distress in Maryland,

Plaintiff's claim in this regard fails.  *See Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46,

63, *cert. denied*, 306 Md. 1118 (1986) ("while other jurisdictions may allow recovery under the

concept of negligent infliction of emotional distress Maryland does not.").

> e.    *Intentional Infliction of Emotional Distress*

Under Maryland law, in order to state a claim for intentional infliction of emotional

distress, Plaintiff must plead with specificity that (1) Defendants engaged in intentional or

reckless conduct; (2) Defendants conduct was extreme and outrageous; (3) there is a causal

connection between Defendants' conduct and Plaintiff's emotional distress; and (4) Plaintiff's

emotional stress was severe.  *See Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000).

*See also Hamilton,* 66 Md. App. at 58 ("We wish to stress that each of these four requirements

must be satisfied completely before a cause of action will lie; meeting even one element less

than fully will not suffice.").

Extreme and outrageous conduct is conduct that "must completely violate human

31

dignity." *Hamilton*, 66 Md. App. at 59.  The Court does not find any allegations by Plaintiff of

Defendants' conduct that would qualify as outrageous conduct under this standard.  Severe

emotional distress is defined as "an emotional response so acute that no reasonable person could

be expected to endure it."  *Id.* at 60–61.  Plaintiff likewise does not plead any facts suggesting

that he experienced any reaction that could be defined as acute based on any of Defendants'

actions.  Therefore, without analyzing the other required elements for the tort at issue, the Court

safely concludes that Plaintiff has failed to state a common-law claim for intentional infliction

of emotional distress.

In sum, Plaintiff has failed to state any claim on which relief can be granted in his

Complaint.  Consequently, all Defendants' Dispositive Motions shall be GRANTED under

Federal Rule of Civil Procedure 12(b)(6), or in the alternative, under Federal Rule of Civil

Procedure 56(e) based on Plaintiff's failure to refute the arguments raised by Defendants in their

dispositive motions.

### F.    *Plaintiff's Motions to Strike*

Plaintiff filed two Motions to Strike Defendants' dispositive motions pursuant to Federal

Rule of Civil Procedure 12(f), which were opposed by the respective Defendants to which they

were addressed.  In Plaintiff's Motions to Strike, Plaintiff boldly alleges that the motions

"[were] made in bad faith for the improper purposes of delay and harassment, [] are a sham and

impertinent and the entire matter therefore should be stricken as scandalous and impertinent."

Mot. Strike 1 at 2–3;[12] Mot. Strike 2 at 1.  Plaintiff alleges that the transcript, orders, and

Plaintiff's various motions in the Charles County case should not be considered by the Court

because they have not been properly authenticated as a procedural matter.  Mot. Strike 1 at 4;

Mot. Strike 2 at 3–9.  Plaintiff also repeats the substantive claims in his Complaint regarding

statute of limitations and venue issues related to the judgment against Plaintiff in Charles

County, Maryland.  Mot. Strike 1 at 5–7; Mot. Strike 2 at 9–11.  Finally, Plaintiff states that use

of the Rooker-Feldman doctrine in this case would run contrary to public policy.  Mot. Strike 1

at 3–4; Mot. Strike 2 at 7–8.

Pursuant to Federal Rule of Civil Procedure 12(f), "[u]pon motion made by a party

before responding to a pleading . . . the court may order stricken from any pleading any

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions

to strike pleadings are generally considered a drastic remedy disfavored by courts, and the

decision to deny or grant such motions is in the sound discretion of the Court.  *Canady v. Erbe

Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7–8 (D.D.C. 2004).  Furthermore, a number of courts

do not consider motions to be "pleadings" which may be stricken under Federal Rule of Civil

Procedure 12(f).  *See* Fed. R. Civ. P. 7 (distinguishing between pleadings and motions); *Powell

v. Fidelity Nat'l Fin. Inc.*, 2003 WL 22134854 *2 (N.D. Cal. 2003); *O'Connor v. State of Nev.*,

507 F. Supp. 546, 547–48 (D. Nev. 1981); *Sauls v. Bristol-Myers Co.*, 462 F. Supp. 887, 888 n.1

(S.D. N.Y. 1978).

---

[12]  When referencing Plaintiff's Motions to Strike, the Court shall refer to page numbers rather than
paragraph numbers for clarity because Plaintiff did not number each and every paragraph.

In his Motions to Strike, Plaintiff does not provide *any* facts suggesting that the filed dispositive motions are redundant, immaterial, impertinent, or scandalous.  Furthermore, Plaintiff fails to demonstrate that any of the defenses raised by Defendants are insufficient.  The statute of limitations and venue issues raised by Plaintiff simply reiterate arguments made in his Complaint.  Furthermore, Plaintiff does not make a successful argument as to why invocation of the Rooker-Feldman doctrine would run against public policy in this case beyond merely stating it to be so.

Finally, with regard to the alleged improper authentication applied to the public records attached to Defendants' dispositive motions, Plaintiff never contested the arguments raised by Defendants in their oppositions to his Motions to Strike that the documents that Defendants attached to their dispositive motions (including a certified trial transcript and sworn affidavits) were properly authenticated for the purposes of submission with a motion for summary judgment.  *See* WGL's Opp'n Mot. Strike ¶ 2; Compu-Link's Opp'n Mot. Strike at 5–15; Stanbury's Opp'n Mot. Strike at 5–7.  More importantly, in Plaintiff's own attachments to his Motion to Amend Complaint, Plaintiff attaches identical copies of the records he stated had not been authenticated according to proper procedure.  The Court thus does not take issue with the documents–which are largely matters of public record–accompanying Defendants' dispositive motions.

Accordingly, the Court shall DENY both of Plaintiff's Motions to Strike.  However, since said Motions were offered by Plaintiff in Court-ordered[13] response to Defendants'

---

[13] *See* Docket Entry [21].

dispositive motions, and in light of Plaintiff's *pro se* status, the Court has considered Plaintiff's

Motions to Strike as Oppositions to Defendants' dispositive motions when ruling on such

motions rather than simply granting Defendants' dispositive motions as unopposed.

  G.  *Plaintiff's Motion to Amend Complaint*

  The Court also notes that Plaintiff submitted a Motion to Amend Complaint

accompanied by an attached First Amended Complaint on September 13, 2005.  The Motion

was filed after all Defendants had responded to Plaintiff's original Complaint by filing

dispositive motions.  Furthermore, Plaintiff's Motion to Amend was filed after a responsive

pleading was filed in this case, as the Compu-Link Defendants filed an Answer to Plaintiff's

Complaint on May 25, 2005.  *See* Docket Entry [4].

  Plaintiff cites Federal Rule of Civil Procedure 15(a) as the basis for his Motion to

Amend Complaint, stating only that the allegations in the amended complaint should not be

considered as new because they simply "provide more specificity than what was provided in the

initial verified complaint, and that the Boards of Directors are now named as Defendants" as the

reasons and explanation for his Motion to Amend.  Mot. Amend Compl. at 4.  Plaintiff further

claims that "Defendants are not prejudiced by Plaintiff's Motion to Amend Complaint because

they have not yet formally answered the initial complaint . . . ."  *Id.*  The Court notes that a

responsive pleading in the form of Compu-Link's Answer was filed in this case prior to

Plaintiff's filing of his Motion to Amend Complaint.  The Court also notes that all Defendants

in this case filed dispositive motions prior to Plaintiff's filing of his Motion to Amend

Complaint.

Pursuant to Federal Rule of Civil Procedure 15(a), when a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." All Defendants filed oppositions to Plaintiff's Motion to Amend Complaint such that the adverse parties in this case clearly do not give their consent to Plaintiff filing an amended complaint.

Under the "when justice so requires" analysis in which the Court must engage, the Court may deny leave to amend a complaint for a sufficiently compelling reason, such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (citation omitted). In the instant case, considering that the instant proceeding in large part protests the affirmed monetary judgment issued against Plaintiff by another court, and that Plaintiff does not provide any reason for amending what he himself admits are "not new" claims, Plaintiff's Motion to Amend Complaint may be construed by the Court as an attempt to further prolong the instant proceedings to avoid payment on the judgment against him.

Furthermore, the Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss. *James Madison*, *Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). The Court notes that in the instant case, none of the amendments that Plaintiff made to the original Complaint through Plaintiff's submission of an Amended Complaint would change the end result of the dismissal of this action. For clarity's sake, the Court will now address any new points raised by Plaintiff in his Amended Complaint.

1.      *Addition of Parties*

36

In Plaintiff's Amended Complaint, Plaintiff adds the Washington Gas Light Company Board of Directors as well as the Compu-Link Board of Directors as Defendants in the case caption.  Plaintiff also includes different variations of individuals both as persons and corporate entities in the caption of the Amended Complaint.[14]  Since Plaintiff does not raise any valid claims against WGL or Compu-Link as detailed in the preceding sections, the addition of the Boards of the Directors of these two companies to the list of Defendants in this case would be fruitless in providing any basis for relief to Plaintiff.

    2.    *28 U.S.C. § 1343*

Plaintiff claims that Defendants violated 28 U.S.C. § 1343 in the First and Third Claims of his Amended Complaint, which appears to elaborate upon the Second and Third Claims of Plaintiff's original Complaint and as well as Plaintiff's abuse of process claims.  Pursuant to 28 U.S.C. § 1343, the federal district courts have jurisdiction over cases to recover damages, secure equitable relief, or otherwise redress civil rights violations under 42 U.S.C. § 1983, § 1985, and any act of Congress designed to protect civil rights, including the right to vote.  The statute itself is in fact accompanied by the header "Civil rights and elective franchise."  This statute is clearly not applicable to the case at hand, which as discussed above, does not pertain to civil rights in any way.  *See supra* § III(B).

    3.    *15 U.S.C. § 1681 and 15 U.S.C. § 6801*

---

[14]  It should also be noted that the Amended Complaint sometimes refers to Equifax as a Defendant.  *See, e.g.*, Am. Compl. ¶¶ 44, 45.  However, Equifax is not named as a Defendant in the Amended Complaint caption, nor is there any indication that Equifax was ever served or truly intended to be a Defendant in this case.

Plaintiff adds 15 U.S.C. § 1681 and 15 U.S.C. § 6801 as statutory bases for his claims of conspiracy, breach of contract, defamation, fraud, and deceit, stating that Defendants conspired and knowingly, willfully, and fraudulently "(a) communicated false or fraudulent information electronically, by mail, wire, or courier to Plaintiff, Equifax, Experian, the courts, Plaintiff's banks, his wife, and other persons unknown; and (b) accessed Plaintiff's consumer credit file under false pretenses without notice to Plaintiff; and (c) provided false information to CRAs and caused the information's publication in Plaintiff's consumer credit file."  Additionally, Plaintiff alleges that there was fraudulent access of Plaintiff's consumer credit file by some Defendants. Am. Compl. ¶ 51.

Pursuant to 15 U.S.C. § 1681, which is a statement of congressional finding of purpose, Congress finds that the Fair Credit Reporting Act requires consumer reporting agencies to adopt certain procedures.  Plaintiff does not state any facts suggesting that any of the Defendants are consumer reporting agencies who would be encompassed by this statement of purpose regardless of whether an action by a private individual can be premised on 15 U.S.C. § 1681 in the first place.

Pursuant to 15 U.S.C. § 6801, certain financial entities are required to establish standards designed to protect personal information.  "In furtherance of the policy in subsection (a) of this section, each agency or authority described in section 6805(a) of this title shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards . . . ."  15 U.S.C. § 6801.  The agencies and authorities listed in Section 6805(a) include banks, savings associations, and credit unions

(which does not encompass any of the Defendants as described by Plaintiff); Section 6805(a)

further clarifies that the subchapter including 15 U.S.C. § 6801 is intended to be enforced by

"Federal functional regulators, the State insurance authorities, and the Federal Trade

Commission." Plaintiff clearly has not and cannot plead facts sufficient to state a claim under

either statute.

<em>4.      42 U.S.C. § 1986 and Negligent Hiring</em>

Plaintiff alleges in his Amended Complaint that Defendants either knowingly or

negligently hired debt-collection employees, agents, or contractors who violated Plaintiff's

"constitutional and statutory rights, privileges, and immunities." Am. Compl. ¶ 74. As a result,

Plaintiff claims to have suffered embarrassment, humiliation, intentional infliction of mental

anguish, legal debt, loss of confidence, etc. *Id.*

Pursuant to 42 U.S.C. § 1986, "Every person who, having knowledge that any of the

wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be

committed, and having power to prevent or aid in preventing the commission of the same,

neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party

injured, or his legal representatives, for all damages caused by such wrongful act, which such

person by reasonable diligence could have prevented . . . ." Plaintiff is unable to make a claim

pursuant to this statute because he is unable to make a claim pursuant to the statute upon whose

violation it is predicated, 42 U.S.C. § 1985. *See supra* Section III(B).

Negligent hiring is a common law tort and thus will be examined applying Maryland

39

law.  Under Maryland law, "In order to establish a claim for negligent hiring or retention, a

plaintiff must prove that the employer of the individual who committed the allegedly tortious act

owed a duty to the plaintiff, that the employer breached that duty, that there was a causal

relationship between the harm suffered and the breach of the employer's duty, and that the

plaintiff suffered damages."  *Penhollow v. Board of Com'rs for Cecil County*, 116 Md. App.

265, 295 (1997) (citing *Cramer v. Hous. Opportunities Comm'n,* 304 Md. 705, 712-14 (1985)).

Plaintiff has not established that a tortious act occurred, nor has Plaintiff identified individuals

who were negligently hired, shown any breach of duty by any of the Defendants regarding hiring

of such non-specified employees, or established any link between any alleged breach of duty and

any alleged harm suffered by Plaintiff.  "[A] complaint must 'allege, with certainty and

definiteness, facts and circumstances sufficient to set forth [the elements of a negligence

action]' . . . Merely stating that a duty existed, or that it was breached, or that the breach caused

the injury does not suffice . . . ."  *Horridge v. St. Mary's County Dept. of Soc. Services*, 382 Md.

170, 182 (2004) (quoting *Read Drug & Chem. Co. v. Colwill Constr. Co.*, 250 Md. 406, 412

(1968)).  Consequently, Plaintiff's negligent hiring claim would not survive a motion to dismiss.

5.    *Requested Relief*

Plaintiff requests in his amended complaint that the Court declare "[t]he judgment and

orders of the Charles County Court [] a nullity and without legal effect," in addition to forms of

relief requested in his original and presently operative Complaint.  Am. Compl. at 26.  Because

Plaintiff already requested declaratory relief more generally in his original Complaint, and

because the Court has found that Plaintiff's Complaint provides no basis for relief in any event,

this amendment to the Complaint is not relevant.

Since the lack of justification proffered by Plaintiff to support Plaintiff's Motion to Amend Complaint smacks of a dilatory motive, and because Plaintiff's proffered amended complaint would not withstand a motion to dismiss in any case, Plaintiff's Motion to Amend Complaint shall be DENIED.

## IV:  CONCLUSION

For the aforementioned reasons, the Court shall (1) GRANT Defendants Washington Gas Light Company, Ted Bonora, and Paul Teague's [13] Motion for Summary Judgment or Alternatively, to Dismiss for Failure to State a Claim; (2) GRANT Defendants Jerome Stanbury and Adam Kish as individuals and corporate entities as well as A.C. & S. Collections, Inc.'s [17] Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; (3) GRANT [19] Defendants John LaRose, Compu-Link Corporation and Celink's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 12(b)(6) and 56(e); (4) DENY [23] Plaintiff's Motion to Strike Insufficient Defenses and Other Matter, Memorandum of Points and Authorities in Support of Motion to Strike Motion to Strike (sic); (5) DENY [30] Plaintiff's Motion to Strike Insufficient Defenses and Other Matter and Memorandum of Points and Authorities in Support of Plaintiff's Motion to Strike; and (6) DENY Plaintiff's [33] Motion for Leave to Amend

Complaint and First Amended Verified Complaint and Demand for Jury Trial.  An Order

accompanies this Memorandum Opinion.

Date:   February 23, 2006

                                       _____/s/_____

                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge